Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning. This is Judge Wilson in Tampa. Judge Lagoa is in Miami and Judge Martinez is in Miami and we have four appeals that are scheduled for oral argument this morning. We're going to hear the first three appeals and then take a 10-minute break before we hear the appeal. And I see that counsel are present and they're ready to proceed with the first case. It is Pamela Wilson v. Shulkin in the Veterans Administration. And James Radford is here for appellate Wilson. Tiffany Dillingham is here for the appellee. And Mr. Radford, are you ready to begin with your argument? Yes, your honor. May it please the court. My name is James Radford and I'm here to represent the appellant in the case of Pamela Wilson v. The Department of Veterans Affairs. She was the plaintiff below. Ms. Wilson is a disabled veteran and this case is about her multiple attempts to receive what we contend are highly reasonable accommodations that would have allowed her to perform her job at the Department of Veterans Affairs. Mr. Radford, before you do your argument, I just want to clarify and make sure that I understand the record correctly. My understanding from reading the employee handbook, a person, an employee could request a reasonable accommodation either orally or in writing. That's correct? Yes, ma'am. That's correct. Okay. And that a person on behalf of the individual could also request an accommodation. That's correct, your honor. And that the request could be submitted to the appropriate human resources officer, which in this case was Vivian DeRoche. That's correct, your honor. Okay. And my other understanding, I just want to make sure I'm correct, is that there are no magic words in the employee handbook. It specifically says you do not need to use words such as reasonable accommodation, disability, or rehabilitation act in the request. That's correct, your honor. And that's the way that the Americans with Disabilities Act and the Rehabilitation Act has been interpreted by the courts and in the regulations is it's meant to be an open process where an employee can use regular language and basically let the employee, let the employer know through any reasonable means the type of accommodations they need. So that's, and that's explicitly in the written policies of the VA, your honor. Okay. Thank you for clarifying. Yes, your honor. The accommodations that question here are about parking. And I don't know if any of y'all are familiar with the Department of Veterans Affairs offices here in Atlanta in the greater Decatur area on Claremont Avenue. But over the past decade, there's been a lot of construction there. And a lot of that construction has pertained to parking. There historically was a parking problem there. There just wasn't enough parking to accommodate all the veterans and that came there for services and all the various employees. And there was a policy in place during the time that Ms. Wilson was employed there that basically stated that probationary employees were not permitted to park on site. They couldn't park near to the VA's offices. They had to park in a deck about a mile away on the Emory campus and be shuttled over. Ms. Wilson sought basically a reasonable modification of that policy. She was, it was documented. One thing to understand here is the reason, one of the reasons Ms. Wilson was employed by the VA was because she is a disabled veteran. So in this case, there was never a question of the employer not knowing that she had a disability or not knowing that she needed some special needs. That was a part of her employment. And she had a contact at the VA, the Vocational Rehabilitation Center, that was designed to basically be a point at the VA's office where she could communicate with someone about her disabilities and her medical needs and how those needs related to her job and her ability to do the job. Mr. Radford, on the discrimination claim, don't you need medical documentation to establish that you're a qualified person with a disability? You, yes, well, Your Honor, that is one way that a disabled employee could present evidence to an employer about their disability. It's not required as a per se rule. I would give the example, if someone was in a wheelchair and they obviously needed the wheelchair to get up the ramp, and there was no question that that person was disabled, or if they had cerebral palsy, and they obviously had medical needs, or if they were blind and anyone could obviously see that they were walking with a cane, that sort of thing. But the record in this case reflects that medical documentation was requested and it was never provided. So that's kind of at the heart of this case. And our position is, if you look at the record, Ms. Wilson began communicating with her employer in March of 2009 about her need for reasonable accommodation. Mr. Radford, let me ask you a question because she did begin communications, but even under the employee handbook, she didn't communicate with an immediate supervisor, but her friend, or I guess, I don't know if it was a colleague, Rebecca Manning, did communicate on July 7th, which was appropriate under the employee handbook, to Vivian Deloche, who was a human resources person that was in charge, specifically asking for Ms. Wilson, who was a disabled veteran, to be able to utilize the parking space. That was on July 7th. Then on July 8th, the following day, Ms. Wilson sent an email to Ms. Deloche and copied John Smith submitting a request for the appropriate paperwork to file a reasonable parking accommodation due to her service-connected disability. And she explained what the disability was. So that obviously satisfied the employee handbook. And then the an email communication, it looks like, which was copied also to Vivian Deloche saying, your request is denied. Right. There's no reason to accommodate this person in this manner. Is that not sufficient for Ms. Wilson to suggest or to think that that was a denial? Yes, Your Honor. She was explicitly denied. The heart of defendant's argument or the appellee's argument in this case has been a letter that was given to Ms. Wilson on July 22nd. And that letter had two parts. The first part was to say, we've received your request. We don't think there's any connection to your job. We don't think this is reasonable. But if you have some questions, please feel free to send that to us. But before that communication was sent, she had been explicitly told no numerous times. The employer had basically, and without asking for medical documentation, she had been told no. And before she was told no, explicitly, there were numerous instances where the employer just refused to engage her. Not only did HR know about her request, not only did her frontline supervisor know about the request, not only did the vocational rehabilitation counselor know about her request, everyone knew. She was making a lot of noise about this. She was asking and asking every people on all different levels who could help her. And the reason for this is because she kept getting parking tickets. She would come to work. She wouldn't be able to be there in the morning when the shuttle ran, for example, because she had a medical appointment. And so, you know, rather than park a mile away and, you know, kill herself to try to walk a mile with all her disabilities, she would park in a handicapped parking space and come into the office. And she had a handicapped decal. So it wasn't like she was parking illegally, but she did have a handicapped decal. That's exactly right. And the employer actually, you know, when the employer, if they just come on vehicle that it's a vehicle that's permitted to be in handicapped parking, but they, the people in HR and her supervisors had to kind of go an extra step and tell the people to issue the citations. Hey, this person isn't supposed to be parking here. And they were actively everyone, everyone in the decision-making chain knew that she was struggling and she was asking to be able to park in handicapped parking. And they actively interfered with her ability to do that because to them, their priority was to resolve the parking problem at the VA center and to have this strict policy that probationary employees cannot park in on-site period. And when the ADA talks about the employer's obligation to make reasonable modifications to its policies, if it's necessary to accommodate a disabled employee, this is exactly what that's talking about. And when an employer has a hard line rule that they will not modify their policies and that, and that's it, no questions asked, that violates the ADA when it, it results in a disabled employee, not being able to achieve a reasonable accommodation. And that's what happened in this case. But in any event, and this is just with respect to the retaliation claim, you can't really cite any precedent to support your argument that, you know, this sort of activity, you know, unauthorized parking, which is civil disobedience is protected under the Rehabilitation Act. You can't really do that, nor can you quarrel with the fact that one of the reasons for a dissatisfactory productivity. May I respond? My time's expired, but may I respond? You may respond. This is just with regard to the retaliation claim. Yes, Your Honor. So to answer your, your second question first about whether performance also played a role, that's a, there's a dispute of fact as to that. There's, there's documentation in the evidence that we've cited that would lead a reasonable juror to find that the actual reason was fired was because of the parking issue. And that the issue of performance was pretextual, that that was something tacked on and that, but for the parking issue, she would not have been fired. If it was just the performance issue, she would not have been fired. That's protected activity under the Rehabilitation Act when you park where you're not supposed to. So we would make two arguments as to that point. With respect to the characterization of civil disobedience. And we did make that argument that she sort of had a right to protest her being denied accommodations by parking there. But another way to present that to a jury. Before you go on, you made this argument in the district court? I don't think we use the term civil disobedience. We made the argument that she, that basically she was retaliated against for attempting to self-accommodate when the employer would not permit it. And so the, the analogy we would use is if a person in a wheelchair asked over and over to have a ramp and the employer said no, and the person brought their own piece of plywood and set it up so that they could get in. And the employer said, you're not permitted to bring, you know, external property on. And so you're fired for it. I don't think it would be hard for us to say, well, that's not appropriate. You know, this person tried to get the accommodations and were denied. And so they took reasonable measures so that they could get into the office. They brought a wheelchair ramp in, or let's say this was a sexual harassment case. And someone asked over and over again for the employer to stop the harassment and be separated from the employer and from the offending employee and the employer refused. And so that person on their own accord, moved their office away from the employer, the supervisor who was harassing them and they were I don't think we would have any trouble saying that person took reasonable steps so that they could work on an equal basis, despite their disability or despite the existence of a harasser in the workplace, and they were fired for it, that violates the statute. So that's how we would characterize that. And so let me just ask you one, one more question before you before you stop. Is her deposition in the record? Yes, Your Honor. Okay. And refresh my recollection with regard to what she says in her deposition with regard to her ability to take the shuttle. So there were several issues with the shuttle. One was it was simply unreliable, and it ran on a schedule that, for example, if she had a doctor's appointment that morning, and so she wasn't able to be at the office at nine when the shuttle ran, that it just wasn't available for her. She also testified that there weren't grab bars on the shuttle. There was force to stand and she couldn't stand. And that would cause her pain that there were she testified as to a number of factors that made the shuttle a poor option for her. And I think the employer can test whether she's right about that. But those are factual issues for a jury to resolve. All right. Gotcha. Thank you, Mr. Radford. You've reserved some time for rebuttal. And Ms. Dillingham, you may proceed on behalf of the appellee. Thank you, and may it please the court. My name is Tiffany Dillingham, and I represent the appellee, the Department of Veteran Affairs. The court should affirm the decision of the district court because Ms. Wilson failed to establish the prima facie claims under the Rehabilitation Act. To trigger an employer's obligation to provide a reasonable accommodation, the employee must make a specific demand for an accommodation that puts the employer on notice of both the nature of the disability and the need for accommodation because of the disability. Ms. Dillingham, let's go to that though. How do the emails, and I'm not talking about the earlier communications that were oral. I'd like to focus on the specific communications that were via email. So under the handbook, as we established earlier, a person other than the employee can make a request, correct? And you concede that point? Yes, Your Honor. Okay. So when Rebecca Manning on July 7th sends an email to Vivian Deloche, who is the appropriate HR personnel to receive this parking space, and then Ms. Wilson sends Ms. Deloche the following day, July 8th, another communication via email regarding the reason that she needs the reasonable parking accommodation. It's for her disability, and then she references what she has and why it causes a partial paralysis of both of her feet. And then the next day on July 10th, Ms. Manning receives an email communication where Ms. Deloche is also copied on saying, we are not going to give that accommodation. I cannot amend the existing rules to accommodate one person in the manner you outlined. How is that not a denial or first of all, a reasonable accommodation request? And how is it not a denial? Your Honor, the email from Ms. Manning itself was not a specific demand because Ms. Manning's email did not connect Ms. Wilson's disability and the nature of her disability. But the handbook itself already says, you don't need to make magic words. You don't need to put rehabilitation. You don't need to put reasonable accommodation. It's enough. Is this not, are you suggesting to me, given the fact that the next day she gets a specific communication from Ms. Wilson saying, I'm requesting a reasonable parking accommodation due to my service-connected disability. And then she references what that disability is and how she can't be on her feet, that that's not sufficient to put the employer on notice? No, Your Honor. I'm not suggesting that. What I am stating is that Ms. Manning in her email in isolation does not meet the standard that this court set out with regard to what is required of a specific demand. The VA has always. The issue I have is that you have a specific employee handbook. Okay. So the employee handbook, you can't read that in isolation. Our case law is not something that's in isolation. We may use language in an opinion, but an employee handbook is what controls. Because if the employee is told, I don't need to use magic words. And not only don't I not need to use magic words, but another employee or a family member can make a request on my behalf. And I can even do so you should also see if you can do an interim accommodation. You even have an interim accommodation. And that was not even done here. So I don't really understand how this is not a reasonable accommodation, but let's go to the other email. On July 16th, John Smith, who I believe was her immediate supervisor, is that correct? Yes, Your Honor. Okay. He specifically says, to be specific, I said, quote, I consulted with HR on your request, and we do not see a connection with the issue. You've been given parking privilege in VA garage and the essential function of your job performing your job. So how is that not a denial? Why would she need to give any medical information at this point, when they've already made it very clear that they don't see this as a proper request? So Mr. Smith, didn't make that statement to Miss Wilson. And that was a preliminary determination. And this court has previously. This is the issue I have with that is that at the end of the day, the question of whether or not who is responsible for the breakdown of the interactive process, that seems to me that that should be a fact finding determination made by the jury to decide who broke it down. Was it Mr. Smith? When he articulated to her, we don't see that you have an issue. Why should that not be an issue for the jury to make a finding on? Because Your Honor, Miss Wilson, when Mr. Smith then followed up asking for medical documentation, Miss Wilson decided not to respond to that request. Why would she respond to that request? Again, when there was a communication saying, we're not going to do we're not going to allow this other employee to give you their parking space. And two, we don't think that you that this is a reasonable accommodation, that it's an essential function of your job. Your Honor, I think the Stewart versus Happy Herman Cheshire Bridge case is illustrative of this point. In in Stewart, the employee was asking for a specific accommodation, a 30 minute paid break, and the employer outright denied that request. And several months passed where the employee was clearly very unhappy about the situation and complained to her employer and to other employees. And later, the employee approached or the employer approached the employee about potential other options and the employee decided none of those recommendations. Let me let me read from your employee handbook. When possible, interim accommodation will be made until such time as a decision has been made. So long as the accommodation enables the individual to perform the essential functions of the job. So there was really frankly, a hard line rule that nobody was going to be allowed to park in there, even though an employee was willing to give their parking space to that individual, which could have been an interim accommodation until the medical paperwork was in and there was a determination made by the employer. But that wasn't done in this case, correct? That's correct, Your Honor. But I would I would just note that when the HR received Ms. Manning's request, they did not have any information about Ms. Wilson's disability. You had it the following day. We had it the following day, Your Honor, and the VA needed additional information to determine the following day. And then the day after that, there was a rejection of the request from Ms. Manning. And then after that, there was a further denial where the communication was done via email from Mr. Smith to Ms. Wilson. And then afterwards, when she asked for in writing that it was a complete denial. Then all of a sudden they want a paperwork. Well, Your Honor, I would I would just point back to the Stewart decision where this exact same scenario essentially plays out. And once the employee has the opportunity to continue the interactive process and decides not to, this court held in the Stewart decision that that interactive process assumes, I at least I think it would, that there is the possibility of an actual resolution, but not interactive doesn't suggest that I'm just going through the motion so that it can be a denial. I agree, Your Honor. But I also the the law also allows an employer to have the opportunity to determine a reasonable accommodation. And there is some expected back and forth between the employee and the employer where an employer may find that the requested accommodation is not reasonable, but still has the opportunity to then find an accommodation that is available and then it's not an undue burden. That wasn't done here either, was it? Because the the request, there wasn't anyone willing to help her from the higher ups. Your Honor, I, I believe that there is adequate evidence in the record that Ms. Deloach reached out to Ms. Wilson after she received her email and she told Ms. Wilson that she was willing to help in any way she could and that she could come by HR once she received the letter outlining the information that the employer needed. And the fact that Ms. Wilson took her prior communications with Mr. Smith as an outright denial. What's the evidence in the record as to why a person or an individual who has a proper handicap decal was being ticketed? Because Ms. Wilson did not have the permit to park in those spots. So regardless of whether the decal was present, and I believe there's some dispute in the record about that, correct? There isn't, there is a factual dispute about that, correct? But it's not a genuine material issue because Ms. Wilson did not have the permit to park in the on-site deck. Well, she had the permit to park in the handicap space. No, Your Honor, her handicap placard did not allow her to park in the deck as an employee. I guess my question is, is the parking where she was parking, at least I understand from the was it not a parking space that had a handicap sign to say this is only for a disabled handicap permit? I believe on at least one of the occasions it was, Your Honor. But Ms. Wilson did not have a permit in the deck. But my question is, in that parking space that she parked in, if I had a handicap decal, I could park there, correct? I believe so, Your Honor. Okay, so why was she then given a ticket? Because she was not permitted to park in the deck. And that handicap space was for people with permits to park in that deck. So when you say that there's a, for a permit, is there another decal you need? Yes, Your Honor. And where do you receive that decal? You receive that decal from HR. And that's, that's what triggered the response from Ms. Deloach, because Ms. Manning was essentially reaching out. So again, Ms. Deloach knew that she had a handicap decal. So automatically, you don't receive a handicap decal from the government, or from I think, at least in Florida, it's from it's from the county, but I don't know where it is from in Georgia. In order to receive it, you are, by definition, legally disabled, correct? Yes, Your Honor. I have no further questions. And Your Honor, I just want to go back to the point that in the Stewart case, there were several denials by the employer regarding that request for court decided that the employee still had an obligation to engage with the employer. And when she failed to do so, that that was a breakdown of the interactive process. I do want to turn quickly, Your Honor to the retaliation claim, which the court noted that Ms. Wilson has not provided any precedent for establishing that continuing to violate an employer's policies constitutes protected activity, merely because the employee believes that she was entitled to an accommodation. This court in Stewart said that the Rehabilitation Act, quote, does not subject employers to liability for maintaining appropriate discipline in the workplace, even when the discipline is directed at a handicapped individual. And essentially, what Ms. Wilson is arguing is that in any scenario where an employee seeks an accommodation, be it an accommodation of the leave policy and accommodation of a parking policy, that employee is protected to continue to violate that employer's policy. But if they believe that they've been denied an accommodation unlawfully, and that is that is not what the cases in this circuit have said, if we look to the A.E. versus Mercedes Benz case from the circuit in 2016, this court held that a an employee who asked for an accommodation, limiting her hours to 40 hours a week, that was ultimately refused. She was not entitled to self help and just be absent from work without explanation. And for that reason, the court held that she could not maintain a retaliation claim against her employer. And so for those reasons, if there are no other questions, the VA respectfully asked that the court affirm the judgment of the district court. All right. Thank you. And Mr. Radford, you've reserved some time for rebuttal. Yes, Your Honor. With respect to the accommodation case, I want to briefly talk about the Stewart versus Herman's case. And that is a useful case for us because it provides such a stark contrast to our case. The Stewart case is a case where an employee is basically abusing the ADA process to try to request things that aren't related to a disability. In that case, the employer basically bent over backwards to try to accommodate the employee's request. According to the court in that case, the employer offered the employee paid breaks that were shorter than her previous breaks, but not subject to interruption, shorter work shifts to obviate the need for her lunch break, a leave of absence, all sorts of and engaged in sort of a confrontational approach with the employer where nothing was ever good enough and sort of went on a campaign in general to improve workplace conditions in ways that didn't have anything to do with her disability. And this case presents a wonderful contrast to that one because this in our case, you have an employee who is requesting one thing that's very reasonable, just to be able to park on site so that they don't have a long walk, so they don't have a painful, bumpy, jostly ride to work. And it's directly related to the disability. And the employer doesn't try to accommodate the employee, but outright says no, we have a policy, we're sticking to it. And I- Mr. Radford, did you read the Stewart versus Herman's to say that the employee has to choose the accommodation or that the employee can request a reasonable accommodation, but the ultimate decision rests with the employee here? I think the ultimate decision, well, it's the ultimate decision is it's meant to be a joint decision. That's what when the courts talk about the interactive process, the employee and the employer are supposed to work together to come up with something that will both accommodate the employee, but also allow the employer to conduct their business in a way that doesn't pose an undue burden. And ultimately, if there's a dispute as to whether what the employer comes up with complies with the ADA, then we have administrative and legal processes to test that. And this is not a happy Herman's case. This is not a case where you have an employee that is just, you have an employer that's trying to do everything they can to accommodate the employee while still conducting their business. This is a case where the employee asked for one simple thing and the employer just outright says no. And so I do hope the court will look at happy Herman's and compare it to this case and see how different those cases are and how this is a case in which the employee is doing everything right. With respect to the retaliation claim, I want to, I don't want to hang my hat on this idea that what we're promoting is civil disobedience or saying that an employee has a employer has a right to enforce its workplace policy. But what that is saying is that basically the fact that an employee is disabled or the fact that an employee has a discrimination-related claim out there doesn't insulate them from regular workplace discipline. And we, I don't, I don't contest that. The case that we want to present to a jury and Mr. Ratner just set aside the excessive parking tickets. And so there was another reason for the termination and it was unsatisfactory productivity. And so I don't really see that you, I mean, quarrel, that you quarrel with that reason. We do quarrel with that reason. The question, the question for the jury is going to be a causation question. Is, is it true as the that even absent the disability issue that she would have been fired for performance reasons, or was the disability issue a, but for, or the, but for cause of her termination. And we've cited emails and documents in the record in which the employer, it's all about the parking issue. The parking issue is the reason for her termination. And later there's some documentation where the performance issue is tacked on, but based on the totality of the evidence, a reasonable jury could find that that is pretextual. And with the actual reason for her termination was her frequent attempt to attain accommodations for her disability. All right. Thank you, Mr. Radford and Ms. Dillingham. Thank you, your honors.